## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | |
|---|---|
| **MISTY LEANN BOYD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CIVIL ACTION NO. 1:15-12735** |
| | ) |
| **CAROLYN W. COLVIN ,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for child's insurance benefits (CIB) based on disability and Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383f. By Standing Orders entered August 28, 2015, and January 5, 2016 (Document Nos. 4 and 13.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 10 and 14.), and Plaintiff's Response. (Document No. 15.)

The Plaintiff, Misty Leann Boyd (hereinafter referred to as "Claimant"), filed applications for child's insurance benefits based on disability and SSI, on August 2, 2012 (protective filing date), alleging disability as of June 1, 2012, due to depression, anxiety, lower back pain, and frequent ear infections.[1] (Tr. at 13, 184, 186-91, 192-95, 199, 203.) The claims were denied

---

[1] On her form Disability Report – Appeal, dated April 5, 2013, Claimant alleged increased lower back pain, upper back and neck pain, and headaches. (Tr. at 228.) In a further Report, dated June 10, 2013, Claimant further alleged increased depression and back pain. (Tr. at 249.)

initially and upon reconsideration. (Tr. at 13, 60-61, 62-71, 72-81, 82-92, 93-103, 104-05, 106-08, 111-13.) On June 5, 2013, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 13, 128-29.) A hearing was held on April 29, 2014, before the Honorable Jeffrey J. Schueler. (Tr. at 13, 29-59.) By decision dated May 29, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-24.) The ALJ's decision became the final decision of the Commissioner on July 29, 2015, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on August 27, 2015, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). To be entitled to CIB, a claimant must prove that her disability began prior to the attainment of age 22. 42 U.S.C. § 402(d)(1)(B); 20 C.F.R. § 404.350. Section 402(d)(1) provides:

> Every child…of an individual entitled to old-age or disability insurance benefits, or of an individual who dies of a fully or currently insured individual, if such child –
> (B) the time such application was filed was unmarried and (i) either had not attained the age of 18 or was a full-time elementary or secondary school

> student and had not attained the age of 19, or (ii) is under a
> disability…which began before he attained the age of 22….

42 U.S.C. § 402(d)(1). Under Title II, the standard for determining a disability of a child is the same as that of an adult. Accordingly, to qualify for receipt of CID based on the income of a parent wage earner, the claimant must (1) file an application for CIB; (2) be unmarried at the time of filing the application; and (3) be under the age 18, be 18 years old or older, and have a disability that began before the attainment of age 22, or be 18 years or older and qualify for benefits as a full time student. 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350.

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age,

3

education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: maarked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant neither had attained age 22 as of June 1, 2012, the alleged onset date, nor engaged in substantial gainful activity since June 1, 2012. (Tr. at 15, Finding Nos. 1 and 2.) Under the second inquiry, the ALJ found that Claimant suffered from "major depressive disorder; bipolar disorder; generalized anxiety disorder; personality disorder; and panic disorder with agoraphobia," which were severe impairments. (Tr. at 15, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform work at all exertional levels, but was "limited to isolated, low-stress work (defined as having only occasional decision making or changes in the work setting) with only occasional supervision or interaction with the public or co-workers." (Tr. at 18, Finding No. 5.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 22, Finding No. 6.) On the basis of testimony of a Vocational Expert

("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a laundry worker, kitchen worker, and cleaner, at the unskilled, light level of exertion. (Tr. at 22-23, Finding No. 10.) On this basis, benefits were denied. (Tr. at 23, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was born on June 12, 1991, and was 22 years old at the time of the ALJ's decision, May 29, 2014. (Tr. at 22, 36, 186.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 22, 202-04.) Claimant had no past relevant work. (Tr. at 22, 54, 203.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to the undersigned's findings and recommendation.

On March 17, 2009, Claimant was admitted to Beckley-Appalachian Regional Hospital ("ARH"), due to complaints of severe depression and poor energy levels. (Tr. at 260-61.) She was discharged on March 24, 2009, with diagnoses of bipolar disorder, social anxiety disorder, and panic disorder with agoraphobia. (Tr. at 261.)

The record reflects Claimant's treatment with Dr. Philip B. Robertson, M.D., and his nurse practitioner, Carol Felts, N.P., from April 2, 2009, through March 6, 2014. (Tr. at 293-310, 332-33, 350-55.) In April 2009, Dr. Robertson diagnosed depressive disorder, social anxiety disorder, and separation anxiety disorder, and prescribed Wellbutrin, Prozac, and Klonopin. (Tr. at 309-10.) Claimant reported issues of college stress on November 11, 2011. (Tr. at 296.) On January 5, 2012, Claimant reported that she was "doing better," "not really depressed now," and that she slept better. (Tr. at 295.) Dr. Robertson reported that Claimant was relatively stable and responded positively to medications. (Id.) On May 7, 2012, Claimant reported that she had lost interest in attending college classes and reported decreased energy and anxiety. (Tr. at 294.) Dr. Robertson increased Claimant's Wellbutrin dosage. (Id.) On July 2, 2012, Claimant reported that she was "doing okay" and planned to repeat some classes. (Tr. at 293.) Dr. Robertson reported that Claimant was relatively stable, with a better mood and less irritability. (Id.)

On October 23, 2012, Claimant again reported that she was "doing pretty good," and Dr. Robertson noted a stable mood and that her medications were effective. (Tr. at 333.) He also noted that Claimant had dropped out of school. (Id.) On February 19, 2013, Claimant reported that she was "doing okay," and Dr. Robertson noted that she continued to deal with social anxiety but was

"doing pretty good." (Tr. at 332.) He noted on mental status exam that her memory, judgment, and insight were intact. (Id.)

On February 5, 2013, Dr. Tonya McFadden, Ph.D., conducted a mental status examination at the request of the State agency. (Tr. at 326-31.) Claimant reported depression a few times a week, with limited interests, insomnia, and occasional feelings of helplessness, hopelessness, worthlessness, and death. (Tr. at 327.) She reported poor energy, spontaneous anger, difficulty making decisions, and social phobia. (Tr. at 327-28.) Claimant stated that she avoided people because she feared being judged and embarrassed. (Tr. at 328.) Claimant reported that she began experiencing anger problems when she was in the first grade and had felt depressed since the age of seven, and had felt anxious since she was 13. (Tr. at 327.) She reported that she used to babysit two little girls, ages seven and ten, and that she felt very close to them. (Tr. at 329.) Claimant saw the girls and their parents once or twice a week. (Id.) She reported that most of her time was spent playing with the girls, including video games, playing outside, and playing with the animals. (Id.)

On mental status examination, Dr. McFadden observed that Claimant was anxious and depressed with a restricted affect, had normal thought process and content, and had adequate insight but deficient judgment. (Tr. at 329.) Dr. McFadden opined that Claimant's immediate memory, concentration, persistence, and pace were within normal limits but her recent memory was moderately deficient. (Id.) Social functioning was rated as mildly deficient as she was withdrawn and presented without a sense of humor. (Id.) She exhibited infrequent and limited eye contact and spent most of the day with her parents. (Id.) Claimant reported her daily activities to have included watching a sports talk show program, playing video games, napping for a couple hours, and fishing in the spring with her mother a couple times a week. (Id.) Claimant reported that she was very dependent on her mother and sister and did not make any decisions on her own.

(Tr. at 330.) Dr. McFadden diagnosed major depressive disorder, social phobia, and personality disorder with dependent personality and avoidant personality features. (Id.) She opined that Claimant's prognosis was guarded but that she was capable of managing her finances unless due to dependent traits. (Id.)

On February 19, 2013, Dr. Rosemary L. Smith, Psy.D., a State agency reviewing consultant, opined that Claimant's severe affective, anxiety, and personality disorders resulted in mild limitations in daily activities; moderate limitations in maintaining social functioning, concentration, persistence, or pace; and no episodes of decompensation of extended duration. (Tr. at 66.) Dr. Smith assessed moderate limitations in Claimant's ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; and interact appropriately with the general public. (Tr. at 68-69.) Dr. Smith opined that Claimant was "able to understand, remember, and carry out 3- and 4-step commands involving simple instructions in an environment that entails only occasional and superficial interactions with others." (Tr. at 69.) On May 18, 2013, Dr. John Todd, Ph.D., another State agency reviewing consultant, concurred in Dr. Smith's assessment. (Tr. at 87, 89-90.) He noted that although Claimant's social functioning and concentration were not significantly impaired at the consultative evaluation, her daily activities supported more severe deficits. (Tr. at 87.)

Claimant returned to Dr. Robertson on May 16, 2013, and reported that she was "doing fair." (Tr. at 351.) She indicated that she was very depressed for no particular reason and had not taken her Klonopin in a long time. (Id.) On mental status examination, Ms. Felts noted that Claimant had a constricted affect and depressed mood. (Id.) The exam essentially was unremarkable in other respects. (Id.) On July 10, 2013, Claimant again reported that she was "doing fair," and indicated that she had gone swimming but had to leave because she was unable

to stand being around many people. (Tr. at 352.) Ms. Felts noted that she was mildly depressed with a constricted affect. (Id.) Claimant again reported that she had not taken her Klonopin and she declined to take another anti-depressant. (Id.) On October 8, 2013, Claimant reported that she was "doing okay," but continued to isolate herself due to anxiety and less depression. (Tr. at 353.) Claimant reported that she played video games with others. (Id.) Ms. Felts noted that she had a flat and constricted affect. (Id.)

On October 8, 2013, Ms. Felts completed a form Medical Source Statement of Ability to do Work-Related Activities (Mental). (Tr. at 334-36, 356-58.) Ms. Felts assessed marked (severely limited but not precluded) limitations in Claimant's ability to understand, remember, and carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work with or near others without being distracted by them; complete a normal workday or workweek; perform at a consistent pace; interact appropriately with the public, supervisors, or co-workers; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. (Tr. at 334-35, 356-57.) Ms. Felts opined that Claimant had moderate limitations in her ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, and make simple work-related decisions. (Tr. at 334, 356.) She further assessed mild limitations in Claimant's ability to understand, remember, and carry out short, simple instructions. (Id.) Ms. Felts noted that Claimant was socially isolated and withdrawn, had poor coping skills, and had severe anxiety, "which would hinder her job performance." (Tr. at 335, 357.) She noted that Claimant had been limited in this manner since the death of her father in 2003. (Tr. at 336, 358.) Finally, she opined that Claimant would miss more than three days of work a month due to her impairments. (Id.)

On December 9, 2013, Claimant complained of continued depression, lack of energy, and social withdrawal. (Tr. at 354.) Claimant's complaints remained the same on March 6, 2014. (Tr. at 355.) She reported however, that she was playing video games and had plans to go fishing. (Id.)

On January 8, 2014, Dr. L. Andrew Steward, Ph.D., conducted a psychological evaluation at the request of Claimant's attorney, to aid in the determination of Claimant's current level of functioning, personality patterns, and recommendations. (Tr. at 338-45.) Claimant was talkative, easily established rapport, and tried diligently on the testing items, which rendered their results valid and reliable. (Tr. at 338.) She had a constricted affect and anxious and dysphoric mood. (Id.) Claimant was oriented in all spheres and exhibited all mental functions within the average range, including memory, fund of information, judgment, abstract reasoning, attention, and concentration. (Id.) Claimant reported nervousness in the public and when talking to people. (Id.) She experienced depression at times. (Id.) She indicated that her treatment with Dr. Robertson the past five years was helpful. (Id.) Claimant reported that her medications, Prozac, Wellbutrin, Xanax, and Ambien, were helpful. (Id.) She stated that she spent most of her time playing video games and watching television, but that she also visited family and friends and received visitors once a week. (Tr. at 340.)

Results of the Wechsler Adult Intelligence Scale – IV (WAIS-IV) revealed a full scale IQ of 94, which fell within the average range of intellectual abilities. (Tr. at 341-43.) Dr. Steward noted that Claimant fell below average in only a few areas of intellectual functioning, including general fund of knowledge, abstract and concrete reasoning ability in verbal situations, and spatial relations. (Tr. at 343.) Results of the BDI-II revealed severe depression and results of the BAI suggested severe anxiety. (Id.) Dr. Steward diagnosed major depressive disorder, single episode, severe without psychotic features; generalized anxiety disorder; social phobia; and assessed a GAF

of 46, which indicated serious symptoms.[3] (Tr. at 345.) He opined that Claimant appeared "permanently and totally disabled from any type of gainful employment currently and readily available in the United States economic marked on a sustained basis for at least a year or more." (Id.) He further opined that her prognosis was poor for large gains, though she was capable of managing her own funds. (Id.)

Dr. Steward also completed a form Medical Source Statement of Ability to do Work-Related Activities (Mental), on which he assessed marked limitations in Claimant's ability to perform activities within a schedule, maintain regular attendance, and be punctual; complete a normal workday or workweek; perform at a consistent pace; interact appropriately with the public, supervisors, and co-workers; and respond appropriately to work pressures in a usual work setting. (Tr. at 346-47.) He assessed moderate limitations in her ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; and work with or near others without being distracted by them. (Tr. at 346.) Mild limitations were assessed in Claimant's ability to remember locations and work-like procedures; understand, remember, and carry out short, simple instructions; make simple work-related decisions; and respond appropriately to changes in a routine work setting. (Tr. at 346-47.) Dr. Steward opined that Claimant's limitations would cause her to miss more than three days of work per month. (Tr. at 348.)

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 41-50 indicates that the person has "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32 (4th ed. 1994).

The Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing the medical source opinions of Dr. Robertson and Ms. Felts, Dr. Steward, and Drs. Smith and Todd. (Document No. 10 at 6-15.) Respecting the opinion of Dr. Robertson and Ms. Felts, Claimant contends that although the ALJ found that their opinion was unsupported by the medical evidence of record, he failed to identify the records that supported those contradictions. (Id. at 8-10.) She notes that the treating record is limited and that the only records to which the ALJ could have compared were the evaluations by Drs. McFadden and Steward and the assessments of Drs. Smith and Todd. (Id. at 9.) Claimant contends that there was no evidence that contradicted Dr. Robertson's opinion. (Id. at 10.) Respecting the ALJ's reason that Claimant enjoyed socializing with family and friends, Claimant asserts that her isolation was from friends, school, and the public. (Id.) Claimant asserts that she did not have any friends, panic attacks forced her to finish high school online, and she rarely left her home except for appointments. (Id.) The fact that she babysat, played video games, and socialized with family and friends did not minimize her limitations in other respects. (Id.) Next, the ALJ found that little evidence supported a marked limitation in the ability to sustain a normal routine and perform at a consistent pace. (Id. at 11.) Claimant asserts that Dr. Steward corroborated the finding. (Id.) Finally, respecting the ALJ's finding that Claimant was able to play video games, which demonstrated that her ability to sustain concentration, persistence, and pace was not limited severely, Claimant asserts that her mother testified that she was able to maintain attention for only five minutes. (Id. at 12.)

Claimant asserts that Dr. Steward provided the only mental diagnostic techniques in the

14

record, but the ALJ conducted a cursory review of the evidence and failed to acknowledge that all the diagnoses of record were consistent. Respecting Drs. Smith and Todd, Claimant asserts that they failed to review the opinions of Drs. Robertson and Ms. Felts and Steward, and therefore, their opinions were entitled no weight. (Id. at 13-15.)

In response, the Commissioner asserts that the ALJ properly evaluated the opinion evidence in accordance with the controlling Regulations. (Document No. 14 at 10-18.) The Commissioner first asserts that pursuant to 20 C.F.R. § 404.1527, the ALJ was not required to accept any medical opinion to formulate Claimant's RFC, an issue reserved to the Commissioner. (Id. at 11.) Contrary to Claimant's allegations, the Commissioner asserts that the evidence supports the ALJ's decision to give only limited weight to the opinions of Dr. Robertson and Ms. Felts. (Id. at 12.) The ALJ acknowledged Claimant's social isolation and difficulty around strangers, but was unable to accept their marked limitations in social functioning because she was able to socialize with family and friends, including those for whom she babysat and with whom she played video games. (Id.) The ALJ therefore, properly concluded that she could work around others, with no more than occasional interaction. (Id.) The Commissioner further asserts that it was reasonable for the ALJ to conclude that Claimant's routine playing of video games undermined their assessment of marked limitations in her ability to perform at a consistent pace. (Id. at 12-13.)

The Commissioner also asserts that the ALJ's decision that the same evidence undermines Dr. Steward's opinion of marked limitations in social functioning and maintaining pace is supported by the record. (Id. at 13.) Claimant reported that her treatment and medications were helpful. (Id.) Contrary to Claimant's allegations, the ALJ did not give controlling weight to the opinions of Drs. Smith and Todd. (Id. at 14.) Rather, the ALJ gave some weight to their opinions,

15

which was supported by the evidence. (Id.) Although their opinions were given one year prior to the ALJ's decision and before other evidence, their opinions remained reliable because nothing subsequent would have changed their finding. (Id. at 14-15.) Accordingly, the Commissioner asserts that the ALJ's resulting RFC was supported by the record. (Id. at 17-18.) In reply, Claimant reiterates her allegations. (Document No. 15.)

Analysis.

Claimant alleges that the ALJ erred in assessing the opinions of Dr. Robertson and Ms. Felts, Dr. Steward, and Drs. Smith and Todd. (Document No. 10 at 6-15.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2014). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical

16

signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2014). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(i) and 416.927(f)(2)(i).

In his opinion, the ALJ gave the opinion of Ms. Felts and Dr. Robertson, particularly the marked limitations in sustaining an ordinary routine, performing at a consistent pace, completing a normal workday, and in social functioning, limited weight, despite their treating relationship with Claimant, because their opinion was not supported by the medical evidence of record. (Tr. at 21.) The undersigned finds that the ALJ erred in giving the treating source opinion only limited weight. Although the ALJ acknowledged that Claimant was socially isolated and had difficulty being around friends, he found that her ability to socialize with family and close friends, including those for whom she babysat and those with whom she played video games, undermined the treating source assessed limitations. (Id.) The evidence clearly demonstrates Claimant's ability to engage in these activities and to play video games on a continuing, daily basis. The ALJ however, failed to acknowledge that these activities were performed with those persons with whom she felt comfortable. The ALJ discounted the severity of her social anxiety based on these isolated circumstances. The record established that Claimant was unable to complete high school in the

normal classroom setting due to social anxiety. Moreover, Claimant was unable to attend college classes due to a lack of interest and ability to be around others. Thus, despite Claimant's reports to Dr. Robertson that she was doing better and that his treatment and medications helped her, she remained unable to complete college classes. Claimant even reported to Dr. Robertson in July 2013, that she was unable to go swimming in a public pool due to her inability to be around others. (Tr. at 352.) Based on Claimant's continued reports of social isolation, poor coping skills, and severe anxiety, Dr. Robertson and Ms. Felts opined that she was unable to perform substantial gainful employment. The ALJ failed to appreciate Claimant's continued reports of social isolation despite her reports that she felt better and despite her ability to socialize with family and friends with whom she felt a certain level of comfort.

The ALJ also gave little weight to Dr. Steward's opinion for the same reasons he discounted Dr. Robertson's opinion. (Tr. at 21.) The undersigned finds again that the ALJ erred in giving little weight to Dr. Steward's opinion. Claimant reported to Dr. Steward the very activities the ALJ found discounted his opinion: that her five years of treatment with Dr. Robertson and Ms. Felts was helpful, that her medications worked, and that she enjoyed socializing with family and close friends. (Tr. at 21, 338-40.) Dr. Steward however, considered Claimant's reports and found that she suffered marked limitations in sustaining an ordinary routine and performing at a consistent pace. (Tr. at 21.) As discussed above, the ALJ discounted such limitations essentially on the basis that she was able to sustain playing video games most of the day. The undersigned does not find that the ability to sustain one activity on a consistent basis enables Claimant to perform substantial gainful activity with the concentration required for a normal workday. Accordingly, the undersigned finds that the ALJ erred in discounting Dr. Steward's opinion.

18

The ALJ also gave the opinions of Drs. Smith and Todd some weight as their opinions were consistent with Claimant's routine treatment and general stability as evidenced by the medical records and were consistent with the ALJ's assessed RFC. (Tr. at 22.) The undersigned finds that although their opinions were rendered one year prior to the ALJ's opinion and prior to the opinions of Drs. Robertson and Steward, the ALJ was able to rely on their opinions as he considered the evidence subsequent to their opinions. Nevertheless, given that the undersigned finds that the ALJ erred in assessing the opinions of Drs. Robertson and Steward, the undersigned finds therefore, that the weight given to the State agency opinions was in error. Accordingly, the undersigned finds that this matter should be remanded for further consideration of the opinion evidence. The undersigned finds that on remand, the ALJ should consider Claimant's activities as a whole and not isolate her ability to engage with people whom she has a certain level of comfort.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **DENY** the Defendant's Motion for Judgment on the Pleadings (Document No. 14.), **REVERSE** the final decision of the Commissioner, **REMAND** this matter pursuant to sentence four of 42 U.S.C. 405(g) for further administrative proceedings for further consideration of Claimant's RFC and the opinion evidence of record, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days

(filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: July 25, 2016.

Omar J. Aboulhosn
United States Magistrate Judge